IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:23-cv-00182-MR-WCM

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER OF DEFAULT** |
| ) | **JUDGMENT** |
| **ONE RUGER-57 HANDGUN,** ) | |
| **MAGAZINE, AND 5.7 CALIBER** ) | |
| **AMMUNITION seized from Terry** ) | |
| **Williams on or about February 21,** ) | |
| **2023, in Jackson County, North** ) | |
| **Carolina,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Government's Motion for Default Judgment of Forfeiture. [Doc. 6].

Pursuant to Fed. R. Civ. P. 55(b)(2), the Government requests that the Court enter a Default Judgment of Forfeiture as to the Ruger-57 handgun, magazine, and 5.7 caliber ammunition (collectively, "the Defendant Firearm") identified in the Government's Verified Complaint.

# FACTUAL BACKGROUND

As the defaulted party is deemed to have admitted all well-pleaded allegations of fact in the Complaint,[1] the following is a recitation of the relevant, admitted facts.

Terry Williams is a convicted felon with an extensive criminal history that includes previous charges for being a felon in possession of a firearm, burglary, armed robbery, aggravated assault, as well as other violent offenses. [Doc. 1 at ¶ 10]. On December 30, 2022, an officer with the Cherokee Indian Police Department ("CIPD") was dispatched to a location on Paint Town Road in Cherokee, North Carolina due to a complaint made by an individual who alleged that Mr. Williams assaulted her. [Id. at ¶ 11]. The individual also alleged that Mr. Williams had brandished a firearm at her the evening before the assault. [Id.].

On February 21, 2023, CIPD Detectives were notified that Mr. Williams was staying at Harrah's Cherokee Casino hotel in room 1130 and would be evicted by casino security. [Id. at ¶ 12]. Because Mr.

---

[1] Where, as here, an entry of default occurs, the defaulted party is deemed to have admitted all well-pleaded allegations of fact in the complaint. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2011); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied"). Thus, the factual allegations in the Government's Verified Complaint [Doc. 1] are deemed admitted as true.

Williams was a convicted felon with a history of violent offenses, casino security requested assistance from law enforcement for the eviction. [Id. at ¶ 13]. That evening, casino security, assisted by CIPD officers, knocked on the door of room 1130, which was registered to Mr. Williams. [Id. at ¶ 14].

After several knocks on the door, two small children—one five years old and the other two years old—came to the door. [Id. at ¶ 15]. When the children answered the door, CIPD officers could smell a strong odor of marijuana emitting from the room. [Id.].

Casino security asked the children if their parents were inside the room, and the children stated no. [Id. at ¶ 16]. Due to the exigent circumstances of the children being left unattended and the fact that there was probable cause to believe that there was marijuana in the room, CIPD officers entered the room. [Id.].

When CIPD officers entered the room, they saw $663.00 in U.S. Currency in small denominations in plain view on the top of a table next to the window. [Id. at ¶ 17]. They also saw in plain view numerous large gallon sized bags of a green leafy material consistent in the appearance, texture, and odor of marijuana. [Id.]. Because of the two young children, CIPD officers contacted Cherokee Indian Family Safety

Services. [Id. at ¶ 18]. At that time, a female identified as Kaylin Gardner came to the room, who was the mother of the two children. [Id.].

After receiving Miranda warnings, Ms. Gardner spoke to CIPD officers and she stated that the room was rented out to her fiancé, Mr. Williams. [Id. at ¶ 19]. Ms. Gardner explained that she and Mr. Williams had their camper parked across the street and the generator went out, so they decided to rent a room at the Harrah's Cherokee Casino hotel. [Id.].

CIPD officers asked Ms. Gardner where Mr. Williams was, and she indicated he was gambling at the casino. [Id. at ¶ 20]. Ms. Gardner also informed CIPD officers that she purchased a firearm for Mr. Williams, and it was currently being kept at their camper across the street from the casino. [Id. at ¶ 21]. Ms. Gardner stated that she knew that Mr. Williams was a convicted felon and was prohibited from possessing firearms. [Id.].

After speaking with Ms. Gardner, CIPD officers, along with the Bureau of Indian Affairs, obtained and executed search warrants for both room 1130 at the hotel and for the camper that was parked across the street near 730 Paint Town Road. [Id. at ¶ 22]. As the search warrants

were being prepared, CIPD officers located Mr. Williams on the gaming floor. [Id. at ¶ 23].

During the execution of the search warrant of room 1130, CIPD officers located and seized numerous items, including approximately 43 grams of methamphetamine, over four pounds of packaged marijuana, approximately 72 oxycodone pills, digital scales, a marijuana grinder, a suspected ledger, and a laptop computer. [Id. at ¶ 24].

During the execution of the search warrant of the camper, CIPD officers located and seized, among other things, the Defendant Firearm, three additional firearms and ammunition that are not part of this action, approximately 26.3 grams of marijuana in a glass jar in the same area where the Defendant Firearm was located, approximately 3.2 grams of marijuana near a nightstand, and two sets of digital scales. [Id. at ¶ 25].

CIPD officers arrested both Mr. Williams and Ms. Gardner. [Id. at ¶ 26]. Ms. Gardner was arrested on child abuse charges, and Mr. Williams was arrested on charges of possession of a firearm by a convicted felon, trafficking in methamphetamine, possession with intent to distribute marijuana, and possession with intent to sell oxycodone pills. [Id.].

On February 21, 2023, CIPD officers conducted a post-Miranda interview of Ms. Gardner. [Id. at ¶ 27]. Ms. Gardner told CIPD officers that she and Mr. Williams had moved to Cherokee, North Carolina in August 2022, and were living in the camper the majority of the time. [Id.]. Investigators asked Ms. Gardner about the firearms recovered during the course of the investigation, and she was not able to indicate what type of firearms she had. [Id.]. When asked about the purchase of the firearms, Ms. Gardner provided inconsistent information. [Id.]. At one point, she said that she bought one firearm in Atlanta, Georgia in the beginning of 2022, and another in North Carolina in September or October 2022. [Id.]. At another point in the interview, Ms. Gardner stated that she purchased all four of the firearms, one of which was purchased from a licensed dealer and the others from an individual in their neighborhood in Atlanta, Georgia in the beginning of 2022. [Id.].

Investigators asked Ms. Gardner if Mr. Williams' fingerprints would be on the guns, and Ms. Gardner said "possibly," and stated that Mr. Williams had touched and possessed the firearms. [Id. at ¶ 28]. Ms. Gardner also admitted to being a marijuana user and stated that she smokes one to five "blunts" per day. [Id. at ¶ 29].

On February 21, 2023, CIPD officers also conducted a post-Miranda interview of Mr. Williams. [Id. at ¶ 30]. Mr. Williams admitted that he used drugs and smoked approximately one ounce of marijuana a day. [Id.]. When asked about the methamphetamine that was in the hotel room, Mr. Williams stated that he intended to sell the methamphetamine in order to provide for his family. [Id. at ¶ 31]. Mr. Williams also admitted to selling marijuana. [Id.]. When asked about the firearms in the camper, Mr. Williams admitted that he knew the firearms were there and indicated that he purchased all of the firearms. [Id. at ¶ 32]. Mr. Williams stated that he bought the Defendant Firearm from a friend in Atlanta, Georgia. [Id. at ¶ 33].

## **PROCEDURAL BACKGROUND**

The Drug Enforcement Administration ("DEA") timely initiated an administrative forfeiture action against the Defendant Firearm, as well as the three other firearms and ammunition seized in connection with the incident. [Id. at ¶ 35. On April 6, 2023, Ms. Gardner filed a petition for remission or mitigation with DEA as to the Defendant Firearm, asserting that the Defendant Firearm is her property. [Id. at ¶ 36]. On April 21, 2023, an individual named Lavelle Lomax filed a claim with DEA as to the Defendant

7

Firearm. On the claim form, Mr. Lomax contends that the Defendant Firearm was stolen from him. [Id. at ¶ 37].

On July 20, 2023, the Government filed a Verified Complaint for Forfeiture In Rem, alleging that the Defendant Firearm seized from Mr. Williams on or about February 21, 2023, is subject to civil forfeiture under 21 U.S.C. § 881(a)(11) and 18 U.S.C. § 924(d)(1). [Doc. 1]. On July 21, 2023, the Clerk issued a Warrant of Arrest In Rem for the Defendant Firearm. [Doc. 2].

After the Government filed its Complaint and in accordance with Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Government provided direct notice of this action to known potential claimants. Specifically, on July 26, 2023, the Government mailed notice and a copy of the Complaint to Mr. Williams, Ms. Gardner, and Mr. Lomax. [Doc. 3]. On August 22, 2023, the Government mailed a second notice and copy of the Complaint to Mr. Williams. Id. Additionally, in accordance with Supplemental Rule G(4)(a), the Government provided notice by publication as to all persons with potential claims to the Defendant Firearm by publishing notice via www.forfeiture.gov for 30 consecutive days, beginning on July 27, 2023. [Id.].

The Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in Supplemental Rule G(4). During the pendency of this action, no individual or entity has made a timely claim to the Defendant Firearm. On January 9, 2024, the Government filed a motion for entry of Clerk's default. [Doc. 4]. On January 11, 2024, the Clerk entered default. [Doc. 5].

## DISCUSSION

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government has the initial burden of establishing by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). A complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). The Government may obtain forfeiture of a firearm used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and/or proceeds traceable to such controlled substances. See 21 U.S.C. § 881(a)(11). Additionally, the Government may obtain forfeiture of a firearm that was knowingly possessed by a convicted felon and/or was

knowingly possessed by an unlawful user of a controlled substance. See 18 U.S.C. § 924(d)(1); 18 U.S.C. § 922(g)(1) and (g)(3).

Based upon the allegations of the Government's Verified Complaint—which are deemed admitted as true—the Court finds that the Government has satisfied its burden of showing that the Defendant Firearm is subject to forfeiture under 21 U.S.C. § 881(a)(11) and 18 U.S.C. § 924(d)(1). Additionally, the Court finds that the Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in Supplemental Rule G(4). No individual or entity has timely filed a claim to the Defendant Firearm. After careful review, the Court finds that the Government has established that default judgment is appropriate.

## JUDGMENT

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Government's Motion for Default Judgment of Forfeiture [Doc. 6] is hereby **GRANTED**, and Judgment of Forfeiture is **ENTERED** in favor of the United States against all persons and entities with respect to the Defendant Firearm identified in the Government's Complaint.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that any right, title, and interest of all persons to the Defendant Firearm is hereby forfeited to the United States, and no other right, title, or interest shall exist therein.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the United States Marshal is hereby directed to dispose of the Defendant Firearm as provided by law.

**IT IS SO ORDERED**.

Signed: February 5, 2024

Martin Reidinger
Chief United States District Judge